IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANLEY V. GRAFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-0459-K |
| | § | |
| THE OWINGS GALLERY, INC., and | § | |
| NATHANIEL O. OWINGS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendants' Motion to Dismiss (Doc. No. 4); and (2) Plaintiff's Contingent Motion for Leave to Conduct Jurisdictional Discovery (Doc. No. 13). After careful consideration of the motions, the responses, the replies, the supporting appendices, and the applicable law, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Plaintiff's contingent motion for leave to conduct jurisdictional discovery.

I. Factual and Procedural Background

Plaintiff Stanley Graff ("Plaintiff") is a citizen of Texas, residing in Dallas. Defendant Owings Gallery ("Gallery") is a corporation organized under the laws of the state of New Mexico, with its principal place of business in Santa Fe, New Mexico. Defendant Gallery operates two (2) art galleries in Santa Fe, New Mexico.

ORDER – PAGE 1

Defendant Nathaniel O. Owings ("Owings") is a citizen of New Mexico, residing in Santa Fe. Defendant Owings is the president and sole shareholder of Defendant Gallery.

In 2006, Plaintiff purchased a painting by William Victor Higgins ("Higgins painting"). In 2012, Plaintiff and his wife, Deborah Graff ("Deborah") began divorce proceedings. Plaintiff alleges the divorce court prohibited Deborah from selling assets of the marital estate unless she received permission from Plaintiff and the divorce court. Despite this restriction, Plaintiff alleges that Deborah took the Higgins painting without his and the divorce court's knowledge or permission, and pawned it in Arizona. When Deborah defaulted on the loan, the pawn shop sent the painting to an auction house in Chicago, Illinois, where it was ultimately put up for auction on September 15, 2015. Defendant Gallery bought the Higgins painting at this auction, and it was delivered to Defendant Gallery in Santa Fe, New Mexico, where it was displayed. On October 23, 2015, a customer of Defendant Gallery bought the Higgins painting after seeing it in the Santa Fe gallery. The buyer was then invoiced for the Higgins painting on November 2, 2015, but the painting had not yet been delivered.

On November 18, 2015, Defendant Owings spoke with Plaintiff on the telephone. Plaintiff told Defendant Owings that he was in the process of divorcing

his wife and she had stolen the Higgins painting and sold it without Plaintiff's knowledge. Plaintiff asked Defendant Owings to return the painting to him. On Defendant Owings' request, Plaintiff indicated he would provide some type of proof that the Higgins painting belonged to him and was stolen. After this phone call, Defendant Owings contacted the purchaser of the Higgins painting. The painting had not yet been delivered to the purchaser, and Defendant Owings put the purchaser on notice that the sale was suspended because of Plaintiff's theft claim.

Defendant Owings called Plaintiff twice more to inquire about any information Plaintiff could provide to substantiate his theft claim. Both times, Plaintiff told Defendant Owings he was working on getting the information. By November 25, 2015, a week after the first phone call, Defendant Owings still had not received any proof of the theft or ownership of the Higgins painting. Ultimately, the sale of the Higgins painting was reinstated and the painting delivered to the buyer.

Defendant Owings' next communication with Plaintiff was a letter dated July 29, 2016, in which Plaintiff notified Defendants that Plaintiff would be issuing a subpoena related to the Higgins painting. Plaintiff filed this lawsuit against Defendants in Texas state court on January 24, 2017. Defendants removed the case to this Court on February 17, 2019.

II. Motion to Dismiss

A. Legal Standard

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *See Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). When there is no evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction exists; proof by a preponderance of the evidence is not required. *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003)(Lindsay, J.)(citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The plaintiff satisfies his burden by producing admissible evidence which, if believed, would support the existence of personal jurisdiction. *WNS*, 884 F.2d at 203-04. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all factual conflicts are resolved in favor of the plaintiff. *Gardemal*, 186 F.3d at 592; *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). While this is a liberal standard, it "does not

require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

In considering whether the court has personal jurisdiction over a nonresident defendant, the court must consider: (1) whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant; and, if so, (2) whether the exercise of personal jurisdiction is consistent with due process under the United State Constitution. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The Supreme Court of Texas has interpreted the state's long-arm statute "to reach as far as the federal constitution permits." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, this Court need only address whether the exercise of personal jurisdiction over the nonresident defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *Mink*, 190 F.3d at 335-36.

A court may exercise personal jurisdiction over a nonresident defendant under the Due Process Clause "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)(quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

A nonresident defendant's "minimum contacts" can give rise to general or specific personal jurisdiction. *Mink*, 190 F.3d at 336. When the cause of action either arises from or is directly related to the nonresident defendant's contacts with the forum state, there is specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). In contrast, when the nonresident defendant's contacts with the forum state are unrelated to the plaintiff's cause of action but are, instead, "continuous and systematic", there is general personal jurisdiction. *Helicopteros*, 466 U.S. at 414 n. 8; *see Mink*, 190 F.3d at 336. The nonresident defendant's availment of the benefits and protections of the forum state must be such that the defendant "should reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement of purposeful availment acts to ensure that a defendant's "'random, fortuitous, or attenuated' contacts" or the "unilateral activity of another party or a third person" will not result in the defendant being haled into a jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(internal citations omitted).

As for the second question of whether the traditional notions of fair play and substantial justice would be offended, the court considers: (1) the burden of the defendant; (2) any interests of the forum state; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's concern and interest in

ORDER – PAGE 6

efficiently resolving controversies; and (5) the shared interest of the states in advancing fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987).

### B. Application of the Law

Plaintiff contends that Defendants are subject to both specific and general personal jurisdiction in this case.

#### 1. Defendants' Contacts with Texas

Defendants admit to the following contacts with the state of Texas:

1. In 2004, Defendant Gallery, along with three others, participated in a purchase and sale of one (1) painting in Texas. Defendant Gallery never took possession of the painting, and the painting never left Texas.

2. In 2007, Defendant Owings, on behalf of Defendant Gallery, traveled to Texas to view a private art collection. No transactions occurred during this visit.

3. In 2013, Defendant Owings attended an auction in Dallas, Texas, on behalf of Defendant Gallery, and purchased three (3) paintings. Defendant Owings was in Texas for approximately 24 hours.

4. In 2015, Defendant Owings attended an auction in Dallas, Texas, on behalf of Defendant Gallery, and purchased three (3) paintings. Defendant Owings was in Texas for approximately 24 hours.

5. During the last fifteen (15) years, Defendant Gallery has purchased twenty-one (21) paintings from an auction house in Dallas, Texas, via absentee bid. No representative from Defendant Gallery was in attendance.

6. In 2016, Defendant Gallery consigned two (2) paintings for sale with an auction house in Dallas, Texas. Both paintings were sold at auction, and no representative of Defendant Gallery was in attendance. Proceeds from the sales were delivered to Defendant Gallery in New Mexico.

7. Defendant Owings has traveled to Texas for personal reasons on three (3) occasions. In 2010 and again in 2015, Defendant Owings attended a funeral in Texas, spending approximately twenty-four (24) hours in Texas for each visit. In 2014, Defendant Owings attended a wedding in Texas, spending approximately 48 hours in Texas.

Other than these contacts, neither Defendant Owings nor Defendant Gallery have any other contacts with Texas.

### 2. Specific Jurisdiction

In their motion, Defendants argue they are not subject to specific jurisdiction because Plaintiff's claims do not arise from or relate to any of Defendants' contacts with Texas. Plaintiff responds that Defendants could have reasonably anticipated being haled into Texas courts when they "undertook a purposeful act" of

"maintaining possession of, and then selling and delivering to a purchaser, artwork known to be contested as stolen property in a pending Texas litigation."

In his Original Petition, Plaintiff asserts causes of action against Defendants for conversion, unlawful appropriation under Texas Theft Liability Act, promissory estoppel, fraud, and unjust enrichment. These claims all arise from Defendants' sale of the Higgins painting to a buyer when that painting was allegedly stolen.

Specific jurisdiction can be exercised over nonresident defendants where the causes of action arise out of or relate to the nonresident defendants' contact(s) with the forum state. *Helicopteros Nacionales*, 466 U.S. at 414 n.8; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 923-924 (2011). "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales*, 466 U.S. at 418.

The record establishes that the Higgins painting was purchased from an auction in Chicago, Illinois. Defendant Owings' sworn declaration establishes that neither Defendant knew the background of the Higgins painting other than it came from a private collection and had been sold at auction in Nevada in 2004. Additionally, once Defendant Gallery purchased this painting, it was delivered to Santa Fe, New

Mexico, where it was viewed and then purchased by the private buyer. None of either Defendants contacts involved the painting at issue in this case.

Plaintiff argues that Defendants are subject to personal jurisdiction because of their "purposeful act" of maintaining possession of the Higgins painting and then delivering it to a private buyer despite knowing the painting was being "contested as stolen property in a pending Texas litigation." Plaintiff cites the Court to *Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.*, 85 S.W.3d 371 (Tex.App.—Dallas 2002) as instructive. In *Kelly*, the Dallas Court of Appeals concluded the appellant had sufficient minimum contacts with Texas based on, among other things, appellant's purchase of contracts with Texas residents which appellant knew at the time of the purchase that these contracts were the subject of pending litigation in Texas.

The *Kelly* case is easily distinguishable from this case. In *Kelly*, the appellant bought contracts with Texas residents knowing that, at the time of the purchase, those contracts were the subject of pending litigation in Texas. Unlike the *Kelly* case, these Defendants had no knowledge of the Higgins painting's background related to Texas, Plaintiff, or his ex-wife when Defendants purchased it at a Chicago-based auction, or even when it was later sold in Santa Fe to a private buyer (but before it was delivered). Despite Plaintiff's suggestion to the contrary, the mere fact that the Higgins painting may have been involved in a divorce court proceeding in Texas

would not alone be sufficient when Defendants were entirely unaware of the painting's Texas entanglement until after they had purchased and then sold the painting.  Furthermore, the record establishes that Defendant Owings delayed delivery of the painting and suspended the sale to the private buyer once Defendant Owings learned of the ownership dispute and alleged theft from Plaintiff.  Defendant Owings asked Plaintiff to produce proof of the theft, such as a police report, or an order from the divorce court regarding ownership, or any other such proof, so Defendant Owings could verify the situation.  Despite his assurance he would produce proof as requested, Plaintiff never did produce anything to prove ownership. Defendant Owings contacted Plaintiff at least two more times for proof of the contested ownership or theft, all the while delaying delivery to the private purchaser. Plaintiff again failed to produce any proof.   Ultimately, Defendants reinstated the sale and delivered the Higgins painting to the buyer.

Plaintiff's argument that Defendants are subject to specific jurisdiction of this Court because they purposefully acted to "maintain[ ] possession of, and then sell[ ] and deliver[ ] to a purchaser, artwork known to be contested as stolen property in a pending Texas litigation" is wholly without merit.  Plaintiff's causes of action do not arise from or relate to Defendants' contacts with Texas.  In this case, the Court finds there is no basis for specific jurisdiction over either Defendant.  *See Helicopteros*

*Nacionales*, 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.").

### 3. General Jurisdiction

Plaintiff contends that even if Defendants are not subject to this Court's personal jurisdiction, they have sufficient "continuous and systematic" contacts with Texas for the Court to exercise general jurisdiction over Defendants.

If a nonresident defendant has continuous and systematic contacts with the forum state, general jurisdiction may be asserted. *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal*, 815 S.W.2d at 228.

Plaintiff argues the facts of this case are similar to those in *Project Eng'g USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 719 (Tex.App.—Houston [1st Dist.] 1992). In that case, the Houston Court of Appeals concluded that appellant had sufficient continuous and systematic contacts with Texas to establish sufficient "minimum contacts" with Texas for general jurisdiction. *Id.* at 722. In that case, the record established the appellant was a sales representative or distributor in California for

three different Texas companies for several years; the president of appellant company had traveled to Texas at least four times regarding appellant's contracts with those three Texas companies; the Texas companies paid appellant commission checks; appellant's written contract with one of the Texas companies was signed in Texas and the contract provided that Texas law was controlling and any litigation must be brought in Houston, Texas. *Id.* The Houston Court of Appeals also stated that it was reasonable to infer appellant "necessarily had to keep in regular communication with the Texas companies it represented." *Id.* The appellate court concluded those contacts were "continuous and systematic" to establish general jurisdiction over appellant. *Id.*

This Court finds the *Project Engineering* case is easily distinguishable from this case. Defendants' contacts with Texas consist of one-off transactions involving the purchase of three paintings in 2013 and again in 2015 at Texas-based auction where Defendant Owings represented Defendant Gallery; Defendant Gallery's participation in a group purchase and then sale of a single painting located in Texas; the purchase of 21 paintings via absentee bid at Texas-based auction over a 15-year period; the consigned sale of two painting through a Texas-based auction house where neither Defendant Owings or a representative of Defendant Gallery was present; Defendant Owings single trip to Texas to view a private art collection as representative of

Defendant Gallery during which no transactions occurred; and finally, Defendant Owings personal trips to Texas on three separate occasions for two funerals and a wedding, staying at most 48 hours. Neither Defendant Owings nor Defendant Gallery has had any other contacts with Texas. These contacts are not even remotely similar to those in *Project Engineering* in which business agreements were executed between the nonresident party and three Texas companies, choice of law provisions selecting Texas courts and law were contained in at least one of those contracts, the nonresident party acted continuously as a representative or distributor on behalf of three Texas-based businesses over an extended period of time, and presumably the nonresident party kept in regular contact with the three Texas companies on whose behalf the nonresident party acted.

The Court finds that both Defendant Owings' and Defendant Gallery's contacts with Texas are attenuated, isolated or sporadic, at best. *Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random.' 'fortuitous,' or 'attenuated' contacts."). Defendant Owings and/or Defendant Gallery have not "'deliberately' [ ] engaged in significant activities" with Texas or "created 'continuing obligations' between" themselves and Texas residents, such that either Defendant has "availed himself of the privilege of conducting business" in Texas. *Id.* at 475-476.

The Court cannot find that either Defendant Owings or Defendant Gallery purposefully established minimum contacts with Texas.

## III. Motion for Jurisdictional Discovery

Plaintiff filed a "contingent" motion seeking leave to conduct jurisdictional discovery. In his motion, Plaintiff states that he "has identified [in his response to Defendants' motion to dismiss] authority supporting the exercise of personal jurisdiction over Defendants on the known facts. But if the Court concludes that it needs more information to rule on personal jurisdiction, discovery may reveal further bases for exercising personal jurisdiction over Defendants."

This Court has broad discretion in deciding whether to allow a party to conduct jurisdictional discovery. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A plaintiff must make a "preliminary showing of jurisdiction" to be entitled to conduct jurisdictional discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *see Freeman v. US*, 556 F.3d 326, 341 (5th Cir.), cert. denied, 558 U.S. 826 (2009) ("The party seeking discovery bears the burden of showing its necessity."). The plaintiff must put forward what facts she believes discovery would reveal and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000); *see Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, Civ. No. 4:11-CV-629-A, 2012 WL 104980, at *7 (N.D.Tex. Jan.

11, 2012)(McBryde, J.)(plaintiff seeking discovery related to personal jurisdiction must identify the discovery needed, facts expected to be learned from it, and how that information would support personal jurisdiction). "'[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.'" *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir, 2000)(quoting *Wyatt*, 686 F.2d at 284). The Fifth Circuit has upheld a district court's denial of jurisdictional discovery when such discovery "could not have added any significant facts." *Wyatt*, 686 F.2d at 284.

The Court denies Plaintiff's request for jurisdictional discovery. Initially, the Court notes that it was able to rule on Defendants' motion to dismiss based on the known facts and the record. Plaintiff filed this motion as a "contingent" motion seeking discovery "if the Court concludes that it needs more information to rule on personal jurisdiction." Plaintiff argues in his response to Defendants' motion to dismiss that Defendants' known contacts are sufficient for this Court to exercise both specific and general jurisdiction over Defendants. The record before the Court clearly establishes neither specific or general personal jurisdiction can be exercised over either of these Defendants. The Court cannot conclude that any additional information is necessary to rule on personal jurisdiction, so discovery would serve no purpose. *See*

*Kelly*, 213 F.3d at 855. Therefore, denial of Plaintiff's motion is appropriate on this ground alone. *See id.*; *Wyatt*, 686 F.2d at 284.

Even if the Court considered the merits of the discovery request, the Court would still deny the motion. Plaintiff failed to make the required preliminary showing to be entitled to jurisdictional discovery. *See Fielding*, 415 F.3d at 429. Plaintiff stated in his motion that "discovery *may* reveal further bases for exercising personal jurisdiction over Defendants." There is nothing in the record to even suggest that Defendants' contacts with Texas were more substantial than asserted in Defendant Owings' sworn declaration filed in support of Defendants' motion to dismiss. *See Cable Elec., Inc. v. North Am. Cable Equip., Inc.*, Civ. No. 3:08-CV-433-M, 2009 Wl 2382561, at *3 (N.D.Tex. Aug. 10, 2009)(J. Lynn). Also, Defendants' motion to dismiss did not raise any fact issues regarding personal jurisdiction related to Defendants. The Fifth Circuit has made clear that "'discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.'" *See Kelly*, 213 F.3d at 855 (quoting *Wyatt*, 686 F.2d at 284).

Based upon the record, the Court concludes the lack of personal jurisdiction is clear, and discovery would not add any significant facts. *See Wyatt*, 686 F.2d at 284. Plaintiff's contingent motion for leave to conduct jurisdictional discovery is **denied**.

IV.     **Conclusion**

The Court finds that it cannot exercise in personam jurisdiction over either Defendant in this case. Accordingly, the Court **grants** Defendants' motion to dismiss this case for lack of personal jurisdiction as to both Defendants. The Court **denies** Plaintiff's contingent motion for jurisdictional discovery. The Court need not address any alternative grounds for dismissal, nor any other pending motions. The case is hereby **dismissed without prejudice**.

    **SO ORDERED.**

    Signed May 16th, 2017.

    *Ed Kinkeade*
    ED KINKEADE
    UNITED STATES DISTRICT JUDGE